UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| UNITED STATES OF AMERICA, | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| v. | ) | No. 4:19CR00914 HEA/NCC |
|  | ) |  |
| PORTIA LINDSEY, | ) |  |
|  | ) |  |
| Defendant. | ) |  |

**UNITED STATES' RESPONSE TO DEFENDANT'S MOTION TO RECONSIDER ORDER OF PRETRIAL DETENTION**

Comes now the United States of America, by and through its attorneys, Jeffrey B. Jensen, United States Attorney for the Eastern District of Missouri, and Tracy L. Berry, Assistant United States Attorney for said District, and moves the Court to deny Defendant's motion for reconsideration of its order of pretrial detention.

**Introduction**

Defendant seeks reconsideration of the Court's detention order which was imposed after revocation of her pretrial release. DCD 41; 18 U.S.C. § 3142(e). Critically, Defendant does not challenge the Court's determination that she poses a risk of flight and danger to the community. Rather, Defendant advances concerns about the spread of COVID-19 within of the jail system to justify her immediate release on bond despite the fact that there is no evidence that any detainee at her facility has been exposed to COVID-19, and jail administrators have implemented proactive measures to prevent the transmission of the virus. Given that Defendant's concerns about COVID-19 could be invoked by many pretrial detainees with high blood pressure, granting release here would cause a flood of similar requests at a time when the justice system is already inundated with challenges related to coronavirus outbreak.

1

**Facts**

When interviewed for her bail report on November 4, 2019, Defendant advised the Federal Pretrial Services Officer that she was in good health with relatively minor medical problems that included high blood pressure. DCD 9, 3. Because of Defendant's history of non-compliance with her medical treatment, pending criminal cases, substance abuse history, and other material matters, the Federal Pretrial Services Office recommended that Defendant be detained pretrial. DCD 9, 3-6. Finding that there existed conditions or combinations of conditions that would reasonably assure defendant's presence and protect the public, this Honorable Court granted Defendant bond on November 7, 2010. DCD 14.

Less than three weeks later, on November 26, 2019, this Honorable Court revoked defendant's pretrial release because she proved she lacked the ability to abide by the most fundamental condition of release when she discussed her case with her victim's brother in direct contravention of this Court's order. The conduct giving rise to the violation began on November 8, 2019, a day after this Honorable Court granted Defendant pretrial release. DCD 24-1, 1. During a telephone conversation from the jail, defendant and a third-party discussed how she would evade the Court's scrutiny as she engaged in the prohibited contact with the victim's family member. DCD 24-1, 1. She followed through with her plan on November 10th when she and her victim's brother discussed the facts of her case, and the plan for the victim's guardian to cease cooperating in the federal prosecution. DCD 24-1, 2.

Based upon the Defendant's conduct express intent to continue to violate the terms of her pretrial release, and to conceal that conduct from the notice of this Honorable Court, this Honorable Court revoked the terms of pretrial release, and found that "defendant is unlikely to abide by any condition or combination of conditions of release." DCD 34, 1.

The Government urges this Honorable Court to continue its detention order for the same reasons. Under the current circumstances, there appear to be fewer resources available to the Federal Pretrial Services Office to supervise defendant's compliance with her release conditions than existed at the time when she violated the terms and conditions of her pretrial release. The Government also notes that a home visit was not conducted in November 2019.

The Bureau of Prisons ("BOP") has been preparing for a potential COVID-19 outbreak since January 2020 by developing best practices to mitigate transmission. *See* Federal Bureau of Prisons, *Federal Bureau of Prisons COVID-19 Action Plan*, https://www.bop.gov/resources/ news/20200313_covid-19.jsp. Effective March 13, 2020, BOP required all of its facilities to implement a set of measures "to mitigate the spread of the COVID-19" and "to ensure the continued effective operation of the federal prison system." *Id.* These measures include: (1) prohibiting all social and volunteer visits; (2) restricting legal visits (with case-by-case exceptions); (3) suspending inmate facility transfers (with exceptions for medical treatment and other compelling reasons); (4) requiring staff health screening, including temperature checks; (5) implementing a variety of coronavirus-specific protocols for inmates, such as screening new inmates, quarantining asymptomatic inmates, and isolating and testing inmates with exposure risk factors (in addition to its routine infectious disease management program); and (6) modifying operations to maximize social distancing and to limit group gatherings. *Id.*

In the Eastern District of Missouri, the U.S. Marshals Service has recommended that all pretrial detention facilities follow the BOP's COVID-19 mitigation measures. Area detention facilities have already implemented a number of the recommended measures, including limiting visitors and taking prisoners' temperature prior to court appearances. Additionally, each

detention facility has a protocol for responding to the medical issues, including transporting detainees to area hospitals in the usual event they cannot provide in-facility care.

As of the filing of this pleading, the Government is unaware of any reported case of the virus at the St. Louis City Jail where defendant is being detained, nor does Defendant reference any such cases.

## Analysis

Defendant seeks a new bail hearing, and temporary release until such time as the pandemic has ended pursuant to 18 U.S.C. §§ 3142(f) & (i). DCD 41, 9-11. But neither provision allows for such extraordinary relief.

**1. Defendant's concerns about COVID-19 cannot justify reopening her detention hearing under section 3142(f) because the recent outbreak does not have a "material bearing" on whether she poses a flight risk or a danger to the community.**

Defendant first suggests that 18 U.S.C. § 3142(f) allows the Court to reopen her detention hearing based on "changed circumstances" related to COVID-19. DCD 41, 11. But this provision applies only when newly-discovered information has a "material bearing" on whether a defendant poses a flight risk or a danger to the community. *See* 18 U.S.C. § 3142(f). Because the spread of the coronavirus has no impact on this central question, Defendant has failed to identify a permissible basis for reopening her detention hearing.

In relevant part, section 3142(f) allows the Court to reopen a detention hearing if it "finds that information exists that was not known by the movant at the time of the hearing *and that has a material bearing on the issue* whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community." 18 U.S.C. § 3142(f) (emphasis added). As this Court previously instructed in denying a similar request for reconsideration under the Bail Reform Act, such newly discovered

4

evidence must be "sufficient to overcome the key factors on which the initial order of detention were predicated." United States v. Rush, 2017 WL 6541436, at *3 (E.D. Mo. Dec. 1, 2017).

Defendant's motion for reconsideration does not even suggest that her concerns about COVID-19 impact the Court's finding that Defendant poses a flight risk or danger to the community. Thus, there is no basis for reopening her detention hearing under section 3142(f). See, United States v. Jones, 2020 WL 1323109, at *1 (D. Md. Mar. 20, 2020) (rejecting claim for release after detainee was exposed to COVID-19 at another detention facility and despite detainee's underlying health conditions including pregnancy because these considerations did not undermine need for detention based on § 3142(g) factors); United States v. Martin, 2020 WL 1274857, at *4 (D. Md. Mar. 17, 2020) (denying appeal of detention order on similar grounds).

To be sure, the Bail Reform Act identifies a defendant's "physical and mental condition" as a potential factor in the detention analysis. *See* 18 U.S.C. § 3142(g)(3)(A). However, the Act makes clear that this consideration is relevant only to the extent it impacts the underlying "determin[ation of] whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community." Id.

The limited case law Defendant cites concerning section 3142(f) confirms this reading of the statute. For example, in United States v. Cordero Caraballo, the court made clear the defendant's "serious" and "grotesque" gunshot wounds were relevant to question of pretrial detention because they rendered him entirely immobile, thereby mitigating the threat he otherwise posed to the community. See 185 F. Supp. 2d 143, 145–46 (D.P.R. 2002). Unlike the immobilized defendant in Cordero Caraballo, Defendant has not identified a physical or mental condition that has any bearing on the Court's prior finding that she poses a risk of flight and

5

danger to the community, and that there are no conditions or combinations of conditions that will assure her appearance or protect the public.

Defendant also cites a number of cases related the due-process limitations on pretrial detention, but this precedent is inapposite, and any constitutional argument would fail. Dawson v. Asher, 2020 WL 1304557, at *2 (W.D. Wash. Mar. 19, 2020) (denying TRO based on claim that "continued detention in the face of the COVID-19 pandemic violates [detainees'] Fifth Amendment right to reasonable safety while in custody.")

Accordingly, defendant is not eligible for a new detention hearing pursuant to § 3142(f).

2.     **Section 3142(i) permits only the "temporary release" of pretrial detainees, and Defendant has failed to show that this extraordinary relief is necessary for her health.**

Defendant also argues that the Court can grant her release under section 3142(i). However, she has not met her burden of showing that a release from detention is necessary to protect her health.

Section 3142(i) provides that a "judicial officer may . . . permit the temporary release of the person, in the custody of a United States marshal or another appropriate person, to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason." 18 U.S.C. § 3142(i). "A defendant has the burden of showing that temporary release is '*necessary* . . .' under Section 3142(i)." United States v. Dupree, 833 F. Supp. 2d 241, 246 (E.D.N.Y. 2011) (emphasis added); see also United States v. Rebollo-Andino, 312 F. App'x 346, 348 (1st Cir. 2009) (indicating that "temporary release under section 3142(i)" is warranted only "in extraordinary circumstances"). With respect to health conditions, "[t]his provision has been used sparingly" and only where absolutely necessary because care can no longer be managed by a detention facility. United States v. Hamilton, No.

19-CR-54-01 (NGG), 2020 WL 1323036, at *2 (E.D.N.Y. Mar. 20, 2020) (citations omitted). Unlike the detainees referenced by Defendant in support of her motion, there is no evidence that release from detention is necessary because of her high blood pressure or that she cannot obtain adequate treatment for it within the St. Louis City Jail. See, United States v. Scarpa, 815 F.Supp. 88 (EDNY 1993)(continued incarceration of terminally ill AIDS defendant); United States v. Adams, 2019 WL 3037042 (D.OR 2019)(defendant sought relief due to diabetes, heart condition, and open sores); United States v. Johnston, 2017 WL 4277140 (D.DC 2017)(defendant awaiting colon surgery granted temporary release). Given that there are a number of confirmed cases in the St. Louis Area, it may well be safer for Defendant to shelter-in-place in the controlled environment at the St. Louis City Jail—consistent with recent measures being implemented by local, state, and national authorities—than seeking release at this uncertain time.

Despite the lengthy pleading submitted, Defendant fails to meet her burden of showing that the extraordinary remedy of release from detention is necessary, particularly considering the preventative measures detention facilities have taken to mitigate the risks posed by the spread of COVID-19. See United States v. Gileno, 2020 WL 1307108, at *4 (D. Conn. Mar. 19, 2020) ("With regard to the COVID-19 pandemic, [inmate did] not show[] that the plan proposed by the Bureau of Prisons is inadequate to manage the pandemic . . . or that the facility is specifically unable to adequately treat [him]. . . . [T]he Court cannot assume that the Bureau of Prisons will be unable to manage the outbreak or adequately treat Mr. Gileno should it emerge at his correctional facility . . . ."); Martin, 2020 WL 1274857, at *4 ("[W]hile the record confirms that [detainee] suffers from asthma, high blood pressure, *and* diabetes, this alone is insufficient to rebut the proffer by the Government that the correctional and medical staff . . . are implementing

precautionary and monitoring practices sufficient to protect detainees from exposure to the COVID-19 virus.")(Emphasis added).

Courts have observed that "it is a rare case in which health conditions present an 'exceptional reason'" requiring release where detention is otherwise warranted. See United States v. Wages, 271 F. App'x 726, 728 (10th Cir. 2008). These cases also recognize that reasonably necessary treatments are available in prison, and often times, a prison setting will provide superior care than a defendant can obtain on the outside. See United States v. Rodriguez, 50 F. Supp. 2d 717, 722 (N.D. Ohio 1999). In this case, Defendant simply has failed to show that her needs will not be met during her detention. Because Defendant has not demonstrated that his release from detention is necessary for her health or any other compelling reason, the Court must reject the motion for reconsideration or release under section 3142(i).

**3. Releasing pretrial detainees like Defendant would unduly burden the courts, the Pretrial Services Office, and a justice system already under strain from COVID-19.**

In her request for relief, Defendant claims that the Court should grant her immediate release on bond because she "will not be left to [his/her] own devices, but will be supported and monitored by Pretrial Services." DCD 41, 13. This argument completely overlooks the fact that this Court already determined that no condition of release would be adequate to address its concerns about Defendant's flight risk and danger to the community, and Defendant's proven refusal to abide by the most fundamental requirement of bond.

The argument underscores the profound consequences underlying her request for reconsideration. Releasing pretrial detainees like Defendant not only would endanger the community but would impose significant burdens on the justice system, which is already facing other challenges related to the COVID-19 outbreak. For example, detainees who are released

would require some form of monitoring by Pretrial Services Office, in addition to the hundreds of defendants in the Eastern District who are already under supervision.[1] Similarly, the Court would be inundated by requests from other detainees seeking pretrial release. Countless defendants could make the generic argument, now being raised by Defendant, that they should be released due to fears over the coronavirus outbreak and widespread concerns that "pretrial confinement create[s] the ideal environment for the transmission of contagious disease." DCD 41, 4. Thus, to the extent the Court concludes that the Bail Reform Act allows Defendant to relitigate the issue of detention, it should be mindful of these practical consequences in determining whether to grant Defendant's request for immediate release on bond.

## Conclusion

For the foregoing reasons, the Government respectfully requests that this Court deny Defendant's Motion to Reconsider Bond Determination and for Immediate Release.

Respectfully submitted,

JEFFREY B. JENSEN
United States Attorney

 /s/ AUSA
AUSA [Bar #]
Assistant United States Attorney
111 South 10th Street, Room 20.333
St. Louis, Missouri 63102
(314) 539-2200

---

[1] Before a Defendant is placed on release, a Pretrial Services Officer also must vet the proposed residence and meet the proposed third-party custodian and other residents who live there. New release orders would force these Officers to conduct a substantial amount of *in-person*, *in-home* meetings, exposing them to a heightened risk of infection.

**CERTIFICATE OF SERVICE**

A copy of the foregoing will be sent through the Court's electronic case filing system to Diane Dragan, Esq. this 24th day of March, 2020.

                                                <u>s/ Tracy Lynn Berry</u>
                                                ASSISTANT UNITED STATES ATTORNEY